UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES HARMON III,

               Petitioner,

v.                                  Case No. 3:19-cv-1080-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

               Respondents.

_____

**ORDER**

**I. Status**

Petitioner James Harmon III, an inmate of the Florida penal system, initiated this action on September 27, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Harmon challenges his 2017 state court (Duval County) sentence of life imprisonment. He raises two claims. See Petition at 5-7. Respondents have submitted a memorandum in opposition to the Petition. See Answer in Response to Order to Show Cause (Response; Doc. 8). They also submitted exhibits. See Docs. 8-1 through 8-23. Harmon filed a brief in reply. See Reply

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

(Doc. 9). He also submitted exhibits. <u>See</u> Docs. 9-1 through 9-16.  This action is ripe for review.

## II. Relevant Procedural History

The state court described the nature and circumstances of the criminal offenses involving Harmon, stating in pertinent part:

> It all began as a plan to get money, but ultimately turned into a week-long crime spree that terrorized the Riverside community in Jacksonville. Defendant and his co-defendant kidnapped and robbed four different individuals over that week in January 1981. Defendant and the co-defendant drove each victim around Jacksonville, taunting the victims with threats of violence while robbing them, showing a wanton disregard for the terror they instilled in each victim of their impending demise. They attempted to murder all four victims[] but were only successful in their plans as to Mr. Langston and Mr. Kennedy. Mr. Chadwick escaped with a wound to his knee, leaving only Mr. Burge physically unharmed.

Docs. 8-1 at 159; 9-9 at 12 (record citations omitted). The United States Court of Appeals for the Eleventh Circuit provided a brief procedural history, stating in pertinent part:

> In 1981, Harmon, who was then 17 years old, pleaded guilty to two counts of second degree murder, one count of armed robbery, and one count of kidnapping.[3] In a separate case, he was convicted by a jury of one count of armed robbery and one count of

---

[3] Duval County Case Nos. 81-CF-984 (armed robbery and kidnapping; victim Robert Chadwick, Jr.), 81-CF-986 (second degree murder; victim Raymond Kennedy), and 81-CF-987 (second degree murder; victim Clarence Langston, Jr.).

kidnapping.[4] In total, Harmon was adjudicated guilty of committing six felonies, each "punishable by imprisonment for a term of years not exceeding life imprisonment" pursuant to Sections 782.04(2), 787.01(2), and 812.13(2)(a), Fla. Stat. (1981). When the pleas were taken, the court advised Harmon that the maximum sentence on each count was life imprisonment, but that there was no plea agreement as to the sentence. Instead of life sentences, the court imposed six consecutive terms of one hundred years each and retained jurisdiction to deny him parole during the first one-third of the total sentence, or for two hundred years. Harmon's attorney objected that the court could not legally retain jurisdiction over a period greater than Harmon's actual lifetime, but did not move to withdraw the guilty pleas.

Harmon appealed, arguing that the court erred in sentencing him to six hundred years and retaining jurisdiction for two hundred years because the sentence exceeded the statutory maximum. Harmon requested correction of the sentences, but did not request withdrawal of the pleas. The appellate court affirmed and certified the following issue to the Florida Supreme Court: "[W]hether a sentencing court, authorized to impose for each of six felonies a term of years not exceeding life imprisonment, may impose six consecutive 100-year terms and retain jurisdiction for one-third of each sentence, aggregating 200 years, to review any parole release order of the Parole Commission." The Florida Supreme Court accepted jurisdiction, answered the question affirmatively, and upheld the convictions and sentences. Harmon v. State, 438 So. 2d 369 (Fla. 1983).

Harmon v. Barton, 894 F.2d 1268, 1269 (11th Cir. 1990) (footnotes omitted).

---

[4] Duval County Case No. 81-CF-985 (armed robbery and kidnapping; victim Herman Burge).

On July 19, 2016, Harmon filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800 in Case Nos. 984 and 985. Docs. 8-1 at 24-26; 8-6 at 22-24. In the Rule 3.800 motion, he asserted that he was entitled to resentencing for the non-homicide offenses under Graham v. Florida, 560 U.S. 48 (2010), Florida's 2014 juvenile sentencing legislation, and Henry v. State, 175 So. 3d 675 (Fla. 2015). That same day, he filed a motion for postconviction relief in Case Nos. 986 and 987. Docs. 8-11 at 201-03; 8-12 at 1-12; 8-18 at 57-71. In the postconviction motion, Harmon asserted that his sentences violated the Eighth Amendment and the dictates in Miller v. Alabama, 567 U.S. 460 (2012), and Atwell v. State, 197 So. 3d 1040 (Fla. 2016). The State conceded that Harmon was entitled to resentencing on both counts of second degree murder. Docs. 8-12 at 39; 8-18 at 92. On February 15, 2017, the court granted Harmon's motions and appointed counsel to represent him. Docs. 8-1 at 27-39; 8-6 at 51-61; 8-12 at 43-52; 8-18 at 96-106. Harmon filed a motion for a Faretta[5] inquiry and leave to proceed pro se on July 11, 2017. Doc. 8-1 at 52. After a hearing advising Harmon of the disadvantages of representing himself, the court granted his motion, found that Harmon knowingly and intelligently waived his right to court-appointed counsel, and relieved Harmon's counsel from further representation, effective July 20, 2017.

---

[5] Faretta v. California, 422 U.S. 806 (1975).

Id. at 60-63.

On October 26, 2017, the court held a resentencing hearing, Docs. 8-4 at 148-206; 8-5 at 1-33, at which Harmon appeared pro se and testified, Doc. 8-5 at 2-5. On December 6, 2017, the court stated in pertinent part:

> All right. Mr. Harmon, I've given much thought to your cases and to you as to what is the appropriate thing to do since this case came to my attention, and certainly since October when we had a sentencing hearing. Instead of going through all the reasons and findings that I made to the sentence that I'm going to impose, I'm not going to do that, they were written in a sentencing order[6] that I'm going to give a copy of to you, the bailiff has that for you now, hopefully it will set out with clarity, that was my intent, to explain why I'm doing what I'm doing. There[] [are] many attachments to that order to back up the findings.
>
> So, pursuant to those findings as to the six counts in the four different cases, I'm going to sentence you to life in prison, give you credit for all the time that you've served, including the jail time…. These sentences are to run concurrently with one [an]other.
>
> As to case numbers ending in 986 and 987, the homicide cases, I'm going to let you know that you have a chance to have the sentence reviewed after 25 years.
>
> As to the cases ending in 984 and 985 [(the non-homicide cases)], you're entitled to a 20 year review.

Doc. 8-5 at 36-37.

---

[6] Docs. 8-1 at 149-70; 9-9.

On December 12, 2017, Harmon filed a pro se motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800. Doc. 8-3 at 208-19. In the motion, he asked for an immediate "sentence review hearing" and asserted that the trial court was biased and vindictive when it sentenced him to life imprisonment, violated Eighth Amendment and ex post facto principles, overlooked rehabilitative evidence provided by Dr. Gregory Prichard, and denied him a meaningful opportunity for early release. Id. The court denied the motion on December 21, 2017. Docs. 8-3 at 220-34; 8-4 at 1-64; 9-11.

On appeal to the First District Court of Appeal (First DCA), Harmon, with the benefit of counsel, argued that the trial court erred when it: (1) found that the primary purpose of sentencing is to punish a juvenile offender; (2) imposed a life sentence; and (3) denied Harmon's pro se motion to correct sentencing error. Docs. 8-5 at 64 (First DCA Case No. 1D18-0111); 8-10 at 292 (1D18-0112); 8-17 at 103 (1D18-0113); 8-23 at 207 (1D18-0114). The State filed answer briefs, Docs. 8-5 at 108; 8-10 at 336; 8-17 at 147; 8-23 at 251, and Harmon filed reply briefs, Docs. 8-5 at 143; 8-10 at 369; 8-17 at 180; 8-23 at 284. The First DCA affirmed on August 30, 2019, Doc. 8-5 at 162, denied Harmon's motion for rehearing, id. at 171, and issued a mandate in each case on March 9, 2020, Docs. 8-5 at 173; 8-11 at 5; 8-17 at 210; 8-23 at 314.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Harmon's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v.</u>

Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely

relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[7] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see Teasley v. Warden, Macon State Prison, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

---

[7] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## VI. Findings of Fact and Conclusions of Law

As ground one, Harmon asserts that his "sentences of life without parole, as applied" to him as a "former juvenile," violate the Ex Post Facto Clause. Petition at 5. As ground two, he states that the life sentences violate his Eighth Amendment right to be free from cruel and unusual punishment. Id. at 7. According to Harmon, when he asked the state court to resentence him "under the new juvenile laws," the court resentenced him to six concurrent life sentences. Id. at 5, 7. Respondents argue that Harmon did not properly exhaust

11

his claim in ground two in the state courts, and therefore the claim is procedurally barred. Response at 14-17. Harmon did sufficiently exhaust the claims (under grounds one and two) in his December 12, 2017 motion to correct sentencing error. Doc. 8-3 at 208-19. The state court ultimately denied the motion with respect to the claims, stating in pertinent part:

> On October 26, 2017, this Court held a resentencing hearing at which Defendant appeared pro se and testified on his own behalf. Sheila Loizos represented the State and presented the following witnesses: (1) Michael Obringer (former Assistant State Attorney); (2) Laura Tully (Florida Commission on Offender Review); (3) Beverley Jackson-Severance (Defendant's sister); (4) Cheryl Bryan (family member of [the victim] Mr. Langston); (5) Carter Byrd Bryan (family member of Mr. Langston); and (6) Julie Smith (family member of Mr. Langston). On December 6, 2017, this Court resentenced Defendant and entered a sentencing Order that same day. (Exs. F, G.)[8]

> In the instant Motion, Defendant raises numerous claims attacking the sentences imposed by this Court on December 6, 2017. Specifically, Defendant alleges his sentences (1) are unconstitutional under the Eighth Amendment; (2) violate ex post facto principles; (3) violate proportionality principles; and (4) demonstrate judicial vindictiveness. Defendant further maintains this Court denied him the appropriate review under [section] 921.1402(2), Florida Statutes.

> **Constitutionality of Defendant's Life Sentences**

> In Graham, the Court held that for a juvenile who committed a non-homicide offense, the Eighth

---

[8] Docs. 8-4 at 15-35, Sentencing Order; 36-59, Judgment.

Amendment forbids the sentence of life without parole unless the State allows the juvenile a meaningful opportunity for release. Graham, 560 U.S. at 82. The Florida Supreme Court interpreted Graham to ensure "juvenile non-homicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation." Henry, 175 So. 3d at 680.

The [United States] Supreme Court later followed with its decision in Miller, holding that for homicide offenses, "mandatory life-without-parole sentences for juveniles" violate the Eighth Amendment's prohibition against cruel and unusual punishment. Miller, 567 U.S. at 470. The Court ruled that the trial court must "follow a 'certain process – considering an offender's youth and attendant characteristics – before imposing a particular penalty,' emphasizing that 'youth matters for purposes of meting out the law's most serious punishment.'" Washington v. State, 103 So. 3d 917, 919 (Fla. 1st DCA 2012) (quoting Miller, 567 U.S. at 483). To sentence a juvenile offender, the trial court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Miller, 567 U.S. at 470. Notably, the Supreme Court did not foreclose a court's ability to sentence a juvenile to life in prison without the possibility of parole in homicide cases. Id. at 480.

The Florida Legislature enacted chapter 2014-220 of the Laws of Florida, designed to bring Florida's juvenile sentencing statutes into compliance with the United States Supreme Court's Eighth Amendment juvenile sentencing jurisprudence. Horsley v. State, 160 So. 3d 393, 395 (Fla. 2015). This statute does not foreclose the possibility of sentencing a juvenile to life in prison for homicide and non-homicide offenses, so long as the juvenile receives a review mechanism

13

within his or her sentence. § 775.082(3)(a), (b), (c), Fla. Stat.

According to Rule 3.781(b),[9] a court must allow the defendant and the State "to present evidence relevant to the offense, the defendant's youth, and attendant circumstances, including, but not limited to those factors enumerated in section 921.1401(2), Florida Statutes." Furthermore, the court is required to allow the defendant and the State "to present evidence relevant to whether or not the defendant killed, intended to kill, or attempted to kill the victim." Fla. R. Crim. P. 3.781(b). The amended statutes now also provide a sentence review mechanism for juveniles sentenced to substantial prison terms. See § 921.1402, Fla. Stat. (2014).

On October 2[6], 2017, this Court held a sentencing hearing in the above-captioned cases and allowed both Defendant and the State to present evidence related to the factors enumerated within section 921.1401(2), Florida Statutes. This Court considered the information presented during that hearing and wrote a sentencing Order to support the sentences it imposed on December 6, 2017. (Ex. F.) This Court's sentences comply with the new juvenile sentencing laws and are, therefore, constitutional. See §§ 775.082(3)(b)2a, (c), 921.1401(2)(a)-(j), Fla. Stat. (2017); see also Graham, 560 U.S. at 82 ("The State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term."); Miller, 567 U.S. at 480 ("Although we do not foreclose a sentencer's ability to [impose a life sentence] in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably

---

[9] Florida Rule of Criminal Procedure 3.781, "Sentencing Hearing to Consider the Imposition of a Life Sentence for Juvenile Offenders."

sentencing them to a lifetime in prison."). Defendant is not entitled to relief.

## Ex Post Facto

The Constitution prohibits States from enacting ex post facto laws. U.S. Const. Art. I, §10. "The ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28 (1981) (citation omitted).

In response to Miller, the Florida Legislature enacted, and the Governor signed into law, a new juvenile sentencing law, which provided juveniles sentenced for non-homicide and homicide offenses with an opportunity for release. The question presented to the Florida Supreme Court in Horsley was the impact of the newly-enacted legislation on offenders whose offenses predated the new law. Horsley v. State, 160 So. 3d 405 (Fla. 2015). The court held that the new law applied to offenders whose crimes predated its enactment, concluding that because the Legislature had cured the constitutional infirmity, applying the new law was "most consistent with the legislative intent regarding how to comply with Miller." Id. at 406.

As stated by the Fifth District Court of Appeal, the Florida Supreme Court's decision in Hors[le]y "indicate[s] that ex post facto principles generally do not bar applying procedural changes to pending criminal proceedings." State v. Perry, 192 So. 3d 70, 75 (Fla. 5th DCA 2016), reh'g denied (Apr. 20, 2016), review granted, SC16-547, 2016 WL 1399241 (Fla. Apr. 6, 2016), and certified question answered, 210 So. 3d 630 (Fla. 2016).

This Court finds the Fifth District Court of Appeal's reasoning persuasive. It is clear that this new legislation impacts the procedural nature in which sentences for juveniles are imposed – it does not impose a punishment for an act which was not punishable at the time it was committed[,] nor does it impose additional punishment to that which was already prescribed. Accordingly, this Court finds the new juvenile sentencing laws do not violate ex post facto principles. Defendant is not entitled to relief.

## **Proportionality**

Proportionality analysis is objective and guided by "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Jean-Michel v. State, 96 So. 3d 1043, 1045 (Fla. 4th DCA 2012).

As detailed by this Court's sentencing Order, Defendant engaged in a week-long crime spree that terrorized the Riverside community of Jacksonville. (Ex. F.) Defendant's actions resulted in the deaths of Mr. Kennedy and Mr. Langston, and a life-long injury to Mr. Chadwick. The violent nature of Defendant's crimes do[es] not offend the Constitution as "disproportionate." Accordingly, Defendant is not entitled to relief.

## **Bias and Vindictive Sentencing**

Initially, this Court finds Defendant's allegations of vindictive sentencing are not cognizable in a motion to correct sentencing error. Baxter v. State, 127 So. 3d 726, 732 (Fla. 1st DCA 2013) ("We align ourselves, however, with the Second District, which likewise rejects the use of a Rule 3.800(b) motion as a means for raising a judicial vindictiveness claim . . . ." (citing Mendez v. State, 28 So. 3d 948, 950 (Fla. 2d

16

DCA 2010) ("imposition of a vindictive sentence is fundamental error that may be raised for the first time on appeal."))). In an abundance of caution, however, this Court briefly addresses these claims.

Defendant maintains there is inherent bias and vindictiveness because his sentences violate ex post facto and proportionality principles. As discussed above, this Court finds Defendant's sentences do not violate ex post facto or proportionality principles. As to vindictiveness and bias with regard to mitigation, this Court considered all of the mitigation Defendant presented at the sentencing hearing in the above-captioned case numbers. Defendant specifically alleges this Court did not consider a report by Dr. Gregory Prichard. While this Court granted the State funding for an evaluation completed by Dr. Prichard, the State neither admitted this report during the sentencing hearing nor was the report ever provided to this Court by Defendant. (Ex. H.)[10] Thus, this Court did not review Dr. Prichard's report because it was not before this Court for consideration. As a result, the only information on which this Court could rely to assess the factors within section 921.1401(2)(a)-(j), Florida Statutes, was the information admitted into evidence during the 2017 sentencing hearing, which was comprised of mostly documentation from 1981.

**Sentence Review**

Defendant alleges he filed a Motion on or about September 20, 2017,[11] requesting a review of his sentence, and subsequently asked for a modification of his sentence after this Court pronounced Defendant's sentence on December 6, 2017. At the December 14, 2017 status hearing, this Court noted that it never received Defendant's alleged September 20, 2017

---

[10] Doc. 8-4 at 60, Consent Order Granting State's Evaluation of the Defendant.
[11] Doc. 8-3 at 207.

Motion for Sentence Review, and the Clerk's docket shows no record of this motion.[12]

This Court finds, however, that any allegations related to Defendant's request for a sentence review are moot. As stated at the December 14, 2017 status hearing, this Court will move forward with a sentence review per Defendant's written request received on December 12, 2017. (Ex. I.)[13]

Docs. 8-3 at 222-27 (footnote and selected emphasis deleted); 9-11 at 4-9. The First DCA affirmed the postconviction court's denial of relief per curiam without issuing a written opinion, Doc. 8-5 at 162, and denied Harmon's motion for a written opinion and rehearing on February 17, 2020, id. at 171.

To the extent that the appellate court decided Harmon's claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Harmon is not entitled to relief on the basis of these claims.

---

[12] Doc. 8-5 at 45.
[13] Doc. 8-4 at 61.

Nevertheless, even if the appellate court's adjudication of the claims is not entitled to deference, Harmon's claims are without merit because the record supports the postconviction court's conclusion. In the aftermath of <u>Graham</u> and <u>Miller</u>, the Florida Legislature enacted section 921.1401, titled "Sentence of life imprisonment for persons who are under the age of 18 years at the time of the offense; sentencing proceedings," which became effective July 1, 2014. It provides that "the court may conduct a separate sentencing hearing to determine if a term of imprisonment for life or a term of years equal to life imprisonment is an appropriate sentence." Fla. Stat. § 921.1401(1). Section 921.1401(2) sets forth a non-exhaustive list of ten factors that take into account various aspects of the defendant's youth, background, and offense participation. That section provides:

> In determining whether life imprisonment or a term of years equal to life imprisonment is an appropriate sentence, the court shall consider factors relevant to the offense and the defendant's youth and attendant circumstances, including, but not limited to:
> (a) The nature and circumstances of the offense committed by the defendant.
> (b) The effect of the crime on the victim's family and on the community.
> (c) The defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense.
> (d) The defendant's background, including his or her family, home, and community environment.
> (e) The effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on the defendant's participation in the offense.

> (f) The extent of the defendant's participation in the
> offense.
> (g) The effect, if any, of familial pressure or peer
> pressure on the defendant's actions.
> (h) The nature and extent of the defendant's prior
> criminal history.
> (i) The effect, if any, of characteristics attributable to
> the defendant's youth on the defendant's judgment.
> (j) The possibility of rehabilitating the defendant.

Fla. Stat. § 921.1401(2)(a)-(j).

In the instant action, the trial court held a hearing in October 2017, at

which Harmon testified. After the State's argument, Doc. 8-5 at 6-30, Harmon

argued as follows:

> It is the defendant's position that a life sentence would
> be an ex post facto application of the statute for
> juvenile sentencing as being harsh, mean, and
> unconstitutional.
>
> With all due respect to the State, the defendant
> has chosen to remain silent and do[es] not contest
> anything that's being proffered.
>
> Again, I do apologize for my actions as a child, a
> juvenile. I was not -- I was anything but -- I'm not a
> killer, I don't kill women. I never hit my sister. I never
> threatened my sister.
>
> But it is the defendant's position that he is
> entitled to receive, okay, 40 years per sentence [to] run
> concurrent[ly], and for the Court to immediately give
> a sentence review hearing after that. I've proffered
> motions to that effect. Again, a life sentence would be
> just that, cruel and unusual punishment.
>
> As far as what the State presented, they're not
> the foundation that the defendant is incorrigible,

> uncommon and rare, that rare individual that is worthy of a life sentence. That is unfounded because the last DR [(disciplinary report)] or charge that the defendant received was 31 years ago for an assault or a weapon, and I miraculously went through 31 years without having to repeat that.
>
> I'm not a violent person. I was at one time, and I was a child at one time. I am not a violent person now. I'm not a child now. I have changed. Thank you, sir.

Id. at 30-31.

The court resentenced Harmon a few months later. In a sentencing order, the court described the circumstances of each criminal offense and separately addressed each statutory factor listed in Florida Statutes section 921.1401(2)(a)-(j). Docs. 8-1 at 150-154, 159-68; 9-9 at 3-7, 12-21. The court announced the sentence, stating in pertinent part:

> Based on the information described in each factor above, this Court finds that Defendant did intend to kill Mr. Kennedy and Mr. Langston. While Defendant may not have pulled the actual trigger, this Court finds his active participation in these crimes, as described throughout this Order, demonstrates intent to kill Mr. Kennedy and Mr. Langston. Accordingly, in case numbers 1981-CF-00986 and 1981-CF-00987, Defendant is hereby sentenced to a term of life imprisonment. § 775.082(3)(b)2, Fla. Stat. (2014). As dictated by the new juvenile sentencing laws, Defendant is entitled to a twenty-five-year review of this sentence. §§ 775.082(3)(b)2a, 921.1402(2)(b), Fla. Stat. (2014).
>
> As to case numbers 1981-CF-00984 and 1981-CF-00985, Defendant is hereby sentenced to a term of

21

life imprisonment as to each count. § 775.082(3)(c), Fla. Stat. (2014). As dictated by the new juvenile sentencing laws, Defendant is entitled to a twenty-year review of this sentence. §§ 775.082(3)(c), 921.1402(2)(d), Fla. Stat. (2014).

Docs. 8-1 at 168; 9-9 at 21.

As to ex post facto principles, the Eleventh Circuit has stated:

Article I, Section 9, clause 3 of the United States Constitution states, "No ... ex post facto law shall be passed." The Ex Post Facto Clause prohibits Congress from enacting a law that "appl[ies] to events occurring before its enactment ... [and] disadvantage[s] the offender affected by it[.]" Lynce v. Mathis, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (internal quotation marks and citations omitted). An "ex post facto inquiry ... [focuses] not on whether a legislative change produces some ambiguous sort of 'disadvantage,' ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Morales, 514 U.S. at 506 n.3, 115 S.Ct. 1597.[14] The Clause does not "forbid[] any legislative change that has any conceivable risk of affecting a prisoner's punishment." Id. at 508, 115 S.Ct. 1597. Instead, the Clause prohibits only those retroactively applied laws that "produce[] a sufficient risk of increasing the measure of punishment attached to the covered crimes," id. at 509, 115 S.Ct. 1597, or affects "the quantum of punishment" imposed, Dobbert v. Fla., 432 U.S. 282, 294, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). That prohibition "operates not to protect an individual's right to less punishment, but rather as a means of assuring that an individual will receive fair warning of criminal statutes and the punishments they carry." Hock v. Singletary, 41 F.3d 1470, 1472 (11th Cir. 1995) (citing Dobbert, 432 U.S. at 298, 97 S.Ct. 2290, and

---

[14] California Dep't of Corr. v. Morales, 514 U.S. 499 (1995).

Weaver v. Graham, 450 U.S. 24, 28–30, 101 S.Ct. 960,
67 L.Ed.2d 17 (1981)).

United States v. Rosello, 737 F. App'x 907, 908 (11th Cir. 2018). Here,

Harmon's assertion that the trial court's imposition of life sentences is a

violation of ex post facto principles is meritless. See Horsley v. State, 160 So.

3d 393, 405 (Fla. 2015) ("We conclude that applying chapter 2014-220, Laws of

Florida, to all juvenile offenders whose sentences are unconstitutional under

Miller is the appropriate remedy."). As such, Harmon is not entitled to federal

habeas relief as to ground one.

Nor is Harmon entitled to federal habeas relief with respect to his

assertion that his life sentences amount to cruel and unusual punishment

under the Eighth Amendment. Harmon asserts that his legal arguments are

"consistent" with Montgomery v. Louisiana, 577 U.S. 190 (2016),[15] and that life

imprisonment "poses a danger of becoming a death sentence" because he is an

elderly inmate who feels threatened by "the actual presence of COVID-19" at

Union Correctional Institution. Reply at 10. The resentencing court properly

applied Florida Statutes section 921.1401 by holding an individualized

---

[15] The United States Supreme Court stated that "Miller drew a line between
children whose crimes reflect transient immaturity and those rare children whose
crimes reflect irreparable corruption" and that Miller "rendered life without parole
an unconstitutional penalty" for "juvenile offenders whose crimes reflect the transient
immaturity of youth." Montgomery, 577 U.S. at 208-09.

23

sentencing hearing to determine whether a sentence of life in prison or a term of years equal to life imprisonment was an appropriate sentence for Harmon, an offender who was under eighteen years old at the time he committed the crimes. The court made findings relevant to Harmon's youth and attendant circumstances, undoubtedly reflecting that the resentencing court performed the appropriate analysis.

As to the factor concerning the effect of immaturity, impetuosity, or failure to appreciate the risks and consequences on Harmon's participation in the offenses, the court stated:

> While Defendant did not present any evidence as to the science of adolescent brains, this Court is aware of the science and has fully and thoughtfully considered the science on adolescent brain development in deciding an appropriate and constitutional sentence. Higher courts have stated that children are constitutionally different[16] and this Court agrees. Adolescent brain science sheds light on some of the underlying causes of poor judgment and impulsive decision making in youth. Adolescents are more likely to be impulsive, emotional, and unable to appreciate the long-term consequences of their actions. Adolescents are also more likely to give into their impulsive thoughts and engage in risky behavior in order to satisfy their short-term goals.
>
> This Court initially considered the crime against Mr. Chadwick to be more impulsive than the

---

[16] See Miller, 567 U.S. at 480 (stating "we require [the sentencing court] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison") (footnote omitted); Horsley, 160 So. 3d at 399.

remaining three incidents. There is some evidence in the record that Mr. Chadwick called Defendant and the co-defendant a derogatory term when they asked for a ride home, which may have ignited an impulsive response to the situation as Defendant and the co-defendant did not have a plan once they had Mr. Chadwick in the car. However, Defendant and the co-defendant brought a firearm to the interaction with Mr. Chadwick indicating some thought as to what they wanted to do, which belies the argument that this crime was the impulsive action[] of an adolescent mind.

As to the remaining crimes, however, it is clear that Defendant and co-defendant planned and calculated their actions. For each offense, Defendant and co-defendant approached their victim with the pretense of asking for directions. Defendant and the co-defendant, with the exception of the first victim, chose a vulnerable, older male. Defendant and the co-defendant brought a firearm to each crime and attempted to drive the victims to an isolated area on the Northside with the intent to execute them. Defendant and his co-defendant also went to great lengths to cover-up their involvement in the crimes; backing Mr. Kennedy's car into a parking spot so that the tags would be concealed, fleeing to Miami to avoid detection, and fabricating a story about Giddieup to avoid prosecution for Mr. Kennedy's murder.

While this Court has given adolescent brain science great weight, it finds that Defendant's actions go well beyond the immaturity and impetuosity expected of a juvenile brain. Nothing in the record before this Court supports a conclusion that Defendant was caught up in the moment, or lacked time to thoroughly think about the consequences of his actions. Defendant could have stopped his involvement with his co-defendant after the first incident with Mr. Chadwick. Yet, after the first crime with Mr. Chadwick, Defendant and the co-defendant

met and decided they would continue down a treacherous path. Defendant made the conscious decision to continue his crime spree and ended or forever changed the lives of the victims.

This Court finds the level of detail and sophistication that went into committing this crime spree in 1981 goes beyond the rash and impulsive nature expected of a juvenile mind, and instead demonstrates how little influence Defendant's youth had on his actions. Indeed, his actions show something more sinister than mere transient youth.

Docs. 8-1 at 164-65; 9-9 at 17-18. After concluding that the statutory factors weighed in favor of imposing life imprisonment, the trial court resentenced Harmon to life in prison.

Notably, Harmon "has not received an inescapable, irrevocable life sentence" because he has a meaningful opportunity for review under Florida Statutes section 921.1402. Bell v. State, 313 So. 3d 1183, 1189 (Fla. 1st DCA 2021) ("Because section 1402 provides a meaningful opportunity for release, a life sentence which is subject to its review does not violate the Eighth Amendment, and a court sentencing a juvenile offender to life under these circumstances need not make any findings of 'irreparable corruption.'") (citing Phillips v. State, 286 So. 3d 905, 909 (Fla. 1st DCA 2019)); see Calabrese v. State, 325 So. 3d 938 (Fla. 5th DCA 2021) (stating "a sentence imposed after proper consideration of the section 921.1401 factors, with the opportunity for a judicial review of the sentence at twenty-five years pursuant to section

921.1402, is constitutional under the Eighth Amendment"). Insofar as Harmon challenges the state court's determination as to the weighing of the statutory factors, "it is the province of the sentencing court to determine how much weight should be given to each" factor during juvenile resentencing. <u>Bell</u>, 313 So. 3d at 1189. Thus, Harmon is not entitled to federal habeas relief as to his assertions under ground two.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Harmon seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Harmon "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El</u>, 537 U.S. at 335-36 (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Harmon appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate

any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of

September, 2022.


MARCIA MORALES HOWARD
United States District Judge


Jax-1 3/11
c:
James Harmon III, FDOC #080164
Counsel of Record